### HELLER INTERNATIONAL CORPORATION, a Delaware corporation, Plaintiff,

v.

Alec SHARP (a United Kingdom subject, as Lead Underwriter of and for all the Subscribing Syndicates of Underwriters of Lloyd's London); Guardian Royal Exchange Assurance Company, Ltd., a United Kingdom Corporation; Assicurazioni Generali, an Italian corporation, Bellefonte Insurance Company, a United Kingdom corporation, Sphere Insurance Company, Ltd., a United Kingdom corporation; and Drake Insurance Company, Ltd., a United Kingdom corporation, Defendants.

No. 85 C 3381.

United States District Court, N.D. Illinois, Eastern Division.

July 12, 1994.

Kimball Richard Anderson, Dan K. Webb, Julie Anne Bauer, Lawrence R. Desideri, Winston & Strawn, Chicago, IL, for Heller Intern. Corp.

Caesar A. Tabet, Pope, Cahill & Devine, Ltd., Edward P. McNeela, McNeela & Griffin, Ltd., Chicago, IL, for Alec Sharp.

Michael A. Pope, Caesar A. Tabet, Pope, Cahill & Devine, Ltd., Stanley V. Figura, Bates, Meckler, Bugler & Tilson, Mark A. Brand, Brand & Novak, Ltd., Chicago, IL, for Guardian Royal Exchange Assurance Co., Ltd., Assicurazioni Generali, Bellefonte Ins. Co., Sphere Ins. Co., Ltd., and Drake Ins. Co., Ltd.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Plaintiff, Heller International Corporation ("Heller") brings this action for breach of contract in its Sixth Amended Complaint against Alec Sharp, lead underwriter of a syndicate of underwriters at Lloyd's of London, Guardian Royal Exchange Assurance Company, Ltd., Assicurazioni Generali, Bellefonte Insurance Company, Sphere Insurance Company, Ltd., and Drake Insurance Company, Ltd. ("Defendants"). Heller alleges that Defendants refused to indemnify it under a fidelity bond issued by Defendants for losses sustained due to an employee's dishonest and fraudulent acts. As a result of the Defendants' refusal to honor the bond, Heller maintains that it was forced to borrow $10 million dollars and has now paid in excess of $10 million in interest.

The Court is once again called upon to offer some guidance to the parties in this insurance coverage dispute which does its best to remain never-ending. Having failed to obtain dismissal of Heller's claim in a prior motion, Defendants now have moved for summary judgment claiming that Heller's claim for damages in excess of the bond's $10 million limit are preempted by Section 155 of the Illinois Insurance Code, 215 ILCS 5/155 (1992). Heller justifiably questions Defendants' failure to raise this issue in its earlier motion to dismiss and argues that they waived this argument by failing to plead it as an affirmative defense.[1] In the alternative, Heller argues that Section 155 does not preempt claims for breach of contract as

---

1. Because we find that Heller's claim is not preempted by Section 155, we need not address the waiver argument made by Heller.

opposed to tort claims. For the reasons set forth below, the Court will deny Defendants' motion.

### DISCUSSION [2]

To answer the questions presented by Defendants' motion, this Court is forced to examine the preemptive scope of Section 155. Unfortunately, numerous courts have struggled to describe the proper scope of Section 155 with much disagreement along the way. Despite the multitude of decisions, it remains true that the Illinois Supreme Court has not yet addressed the precise scope of Section 155 preemption. Consequently, this Court must endeavor to predict how the Illinois Supreme Court would decide the issue presented in this case. In making this determination, the decisions of the intermediate appellate courts are useful, but not necessarily binding, predictors of the view the Illinois Supreme Court would take. *Indiana Harbor Belt R.R. Co. v. American Cyanamid Co.*, 916 F.2d 1174, 1176 (7th Cir.1990); *Green v. J.C. Penney Auto Ins. Co.*, 806 F.2d 759, 761 (7th Cir.1986). This Court must also follow the Seventh Circuit's determinations regarding Illinois law where applicable. Keeping in mind our ultimate goal of predicting the Illinois Supreme Court's views, we now examine the arguments of the parties.

As in any case where statutory provisions are involved, we begin our discussion by quoting the language of Section 155 which provides in pertinent part:

> § 155. Attorney fees. (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorneys fees, other costs, plus an amount

not to exceed any one of the following amounts:

> (a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
>
> (b) $25,000;
>
> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

215 ILCS 5/155 (1992). Defendants contend that Section 155 sets forth the exclusive remedy for an insured suing an insurer who has refused to pay a claim.

Because Defendants rely so heavily on the Seventh Circuit's opinion in *Kush v. American States Ins. Co.*, 853 F.2d 1380 (7th Cir. 1988), we address this authority first. The plaintiff in *Kush* sought to proceed on a claim for intentional infliction of emotional distress against the defendant insurer. In *Kush,* the Seventh Circuit recognized the split in authority on the issue of whether Section 155 preempted claims based on an implied duty of good faith and fair dealing. *Id.* at 1385 (collecting cases); *see also Bageanis v. American Bankers Life Assur. Co.*, 783 F.Supp. 1141, 1147 (N.D.Ill.1992) (collecting cases divided over preemption of compensatory versus punitive damages). The court also noted the ruling of an Illinois appellate court that a claim for intentional infliction of emotional distress was preempted where it was based on conduct proscribed by Section 155. *Id.* (citing *Combs v. Insurance Co.*, 146 Ill.App.3d 957, 100 Ill.Dec. 525, 497 N.E.2d 503 (1986)).

Based on its review of the *Combs* decision and decisions of several other courts, the Seventh Circuit, quoting Judge Shadur, found that:

> tions of the Fifth Amended Complaint. For purposes of this summary judgment motion, the facts are essentially undisputed and with little exception are taken from the allegations of the Sixth Amended Complaint.

---

2. The reader is directed to our prior opinion, reported at 839 F.Supp. 1297 (N.D.Ill.1993), for a more complete summary of the allegations made by Heller. The Sixth Amended Complaint contains only slight modifications to the allega-

*Combs* teaches it is not the legal theory [plaintiff] asserts ... that determines Section 155's preemptive effect. Instead, this Court must look beyond such legal theories to the predicate acts or conduct forming the basis for that claim. If the alleged conduct is within the scope of Section 155, the claim is preempted.

853 F.2d at 1385 (quoting *Zakarian v. Prudential Ins. Co.*, 652 F.Supp. 1126, 1136–37 (N.D.Ill.1987)). Viewing plaintiff's claim in this light, the Seventh Circuit concluded that "the core of the case is an allegation of 'vexatious and unreasonable delay,' the heart of section 155." *Id.* In the context of a suit for intentional infliction of emotional distress, the court also explained that "[a] company that declines coverage often intends never to pay, believing it is not obligated to pay. If that belief is mistaken (or even if it were never sincere to begin with), section 155 sets the penalty." *Id.*

▮ From *Kush*, Defendants correctly argue that claims based on conduct proscribed by Section 155, however labeled, are preempted. Defendants argue that this breach of contract action is such a claim. In contrast, Heller contends that Section 155 preempts tort claims and that the focus on whether the insurer's conduct is vexatious and unreasonable supports their view of this limit on Section 155. According to Heller, a breach of contract action, at least the way it has pleaded its claim, involves no inquiry into whether the alleged conduct of the insurer was vexatious and unreasonable. Heller further maintains that the insurer's state of mind is irrelevant.

Applying the test adopted in *Kush*, this Court agrees with Heller. Defendants steadfastly maintain that claims based on a refusal to cover a loss, such as Heller's claim, fall within the scope of Section 155. Defendants, however, ignore a crucial portion of the statutory language, in which a court must determine whether the insurer's conduct was "vexatious and unreasonable." With that in mind it becomes much easier to understand why particular claims for "bad faith" denial of coverage, intentional infliction of emotional distress, fraud, misrepresentation and breach of the implied covenant of good faith and fair dealing fall within the preemptive scope of Section 155. The allegations that accompany (or should accompany) such claims go to the "heart of section 155" and its provision of a remedy for vexatious and unreasonable conduct.

In contrast, no part of the Sixth Amended Complaint alleges bad faith, improper motives, fraud, questionable conduct or anything suggesting that Heller's claim seeks recovery due to "vexatious and unreasonable" conduct on the part of Defendants. Could Heller have plead its claim to fall within Section 155? Without a doubt, Heller could have made such allegations and has done so at certain stages in the long history of this case. As the Sixth Amended Complaint stands, however, the Court has no occasion to evaluate the propriety or reasonableness of the Defendants' conduct. Despite Defendants' contentions to the contrary, Heller's claim involves an inquiry into whether the various misdeeds of Irving Chudy resulted in covered losses for which Defendants were obliged to provide coverage and whether Defendants' failure to pay entitles Heller to recover the interest it has paid on debt allegedly incurred to cover the alleged Chudy losses.

It is worth reminding the reader that "[w]hile the law does not condone breach of contract, it does not consider it wrongful or tortious." *Carrico v. Delp*, 141 Ill.App.3d 684, 95 Ill.Dec. 880, 885, 490 N.E.2d 972, 977 (1986). Because breaches of contracts are neither inherently wrongful nor tortious, an action alleging a breach of contract without more does not involve conduct proscribed by Section 155. *Cf. Johnson v. Safeco Ins. Co.*, 809 F.Supp. 602, 608 (N.D.Ill.1992) (finding claim not preempted where there were no allegations that defendant acted vexatiously or unreasonably in refusing to admit liability), *aff'd*, 9 F.3d 112 (7th Cir.1993); *see also Freed v. Travelers*, 300 F.2d 395, 399 (7th Cir.1962) (finding earlier version of statute did not limit recovery against insured for breach of contractual duty to provide coverage); *Mohr v. Dix Mutual County Fire Ins.*

*Co.*, 143 Ill.App.3d 989, 97 Ill.Dec. 831, 836, 493 N.E.2d 638, 643 (1986) ("The statute does not limit recovery for the breach of contract but limits and refines recovery for the tort of vexatious and unreasonable delay"). As Judge Holderman noted, "Section 155 creates a statutory cause of action for *tortious conduct* ...." *Mayoff v. Hartford Life & Accident Ins. Co.*, No. 90 C 0571, 1990 WL 141422, at * 5 (N.D.Ill. Sept. 21, 1990); *see also Urfer v. Country Mutual Ins. Co.*, 60 Ill.App.3d 469, 17 Ill.Dec. 744, 376 N.E.2d 1073 (1978) (considering complaint alleging willful and malicious acts by insurer, Presiding Justice Mills, in partial concurrence, noted that "there can be no *tortious recovery* on a contract beyond the statutory proscriptions") (emphasis added). Thus, where the alleged conduct forming the basis of a claim is not tortious or at least alleged to be "unreasonable," Section 155 does not preempt such a claim.

None of the authorities offered by Defendants undermines our reasoning in this case. For example, Defendants cite *Perfection Carpet, Inc. v. State Farm Fire & Casualty Co.*, 259 Ill.App.3d 21, 197 Ill.Dec. 28, 30–31, 630 N.E.2d 1152, 1154–55 (1994), for the proposition that a breach of contract action seeking consequential damages is preempted by Section 155. Upon careful scrutiny of the case it becomes clear that the plaintiff had alleged a breach of the implied duty of good faith and fair dealing. As such, the case does not stand for the broader proposition advanced by Defendants. Instead, *Perfection Carpet* is one of a growing list of decisions holding that claims based on breaches of the implied duty of good faith and fair dealing fall within the preemptive scope of Section 155. *See, e.g., Kush*, 853 F.2d at 1385 (collecting cases); *Civic Fed. Sav. Bank v. Hanover Ins. Co.*, No. 91 C 8286, 1992 WL 188409 (N.D.Ill. July 29, 1992) (Marovich, J.); *Purlee v. Liberty Mutual Fire Ins. Co.*, 260 Ill.App.3d 11, 197 Ill.Dec. 430, 445, 631 N.E.2d 433, 448 (1994).

As Judge Lindberg recently observed, "Section 155 strikes a balance between pro-

viding the insured with a remedy for *specified vexatious and unreasonable conduct by the insurer* and protecting insurers from huge awards of damages bearing no relationship to the amounts at issue under the insurance policies." *Bagcraft Corp. v. Federal Ins. Co.*, 848 F.Supp. 115, 119 (N.D.Ill.1994) (finding claim for bad faith failure to settle preempted) (emphasis added). Neither the language of the statute nor the cases interpreting it indicate that the balance struck by Section 155 should result in limits on an insured's recovery for breach of contract. Accordingly, the Court rejects Defendants' argument to the contrary.

 As explained in our prior opinion, in the ordinary case, the measure of damages for breach of an insurance contract is limited to the policy amount. *Heller*, 839 F.Supp. at 1303. Even in this case where Heller could potentially recover total damages over twice the policy amount, one could not conclude that such an award would bear no relationship to the amounts at issue under the policy.[3] As detailed in our prior opinion, Heller can succeed on its claim for damages in excess of the policy amount only by showing either 1) that these interest costs were the natural result of Defendants' breach of contract or 2) that these interest costs were reasonably foreseeable and within the reasonable contemplation of the parties at the time of contracting. *Id.* at 1305. In either case, the claimed damages would be directly linked to the contract and the parties' agreement. We, therefore, do not find Heller's claim in conflict with either the language or the purpose of Section 155.

Defendants have not cited a single case to this Court finding a breach of contract claim preempted when that claim is *unadorned* with allegations of insurer bad faith, misconduct, or unreasonable action. Our own research has disclosed no such case. In reviewing the numerous decisions concerning the scope of Section 155, this Court observed that the cases often involve multiple counts with one being a simple breach of contract and another count alleging bad faith or fraud or other misconduct. *See, e.g., Bagcraft Corp*, 848 F.Supp. at 116 (three count action

---

**3.** Because of the nature of the damages claimed by Heller, interest costs, and the years spent on this litigation, Heller's alleged damages have the potential to and do grow each day.

for breach of contract, bad faith, and vexatious and unreasonable refusal to settle under Section 155). While these courts extensively discuss the preemptive scope of Section 155, they do not appear concerned with any potential preemption regarding the breach of contract claims, except where those claims are based on breaches of an implied duty of good faith and fair dealing as in *Perfection Carpet*. Although we could dismiss such lack of concern as a mere byproduct of the way the parties chose to file and argue motions, it is noteworthy that no court even mentions preemption with regard to the breach of contract action while at the same time discussing the broad preemption of Section 155 in regard to other claims of insurer bad faith or misconduct. *See, e.g., Kohlmeier v. Shelter Ins. Co.*, 170 Ill.App.3d 643, 121 Ill.Dec. 288, 525 N.E.2d 94, *appeal denied*, 122 Ill.2d 576, 125 Ill.Dec. 219, 530 N.E.2d 247 (1988).

■ Based on our review of the statutory language and the numerous decision interpreting it, the Court concludes that the Illinois Supreme Court would hold that Section 155 does not preempt or limit the recovery of damages for breach of contract, specifically breach of a contractual duty to provide coverage for certain losses, where the plaintiff does not base its claim on allegations amounting to "vexatious and unreasonable" conduct on the part of the insurer. Long after Section 155 was promulgated Illinois courts continued to recognize that ordinary principles of contract law apply to insurance contracts and insurance coverage disputes such as this one. *See Mohr v. Dix Mutual County Fire Ins. Co.*, 143 Ill.App.3d 989, 97 Ill.Dec. 831, 836, 493 N.E.2d 638, 643 (1986). Instead of Section 155, Defendants will have to look to these principles of contract law for limits on Heller's recovery of damages in excess of the policy or Bond limits.

## CONCLUSION

For the reasons set forth above, the Court denies Defendants' motion for summary judgment.