**KNS COMPANIES, INC., etc., Plaintiff,**

v.

**FEDERAL INSURANCE COMPANY, et al., Defendants.**

**No. 94 C 5591.**

United States District Court, N.D. Illinois, Eastern Division.

Nov. 7, 1994.

---

Malcolm H. Brooks, Mark J. Steger, Joseph S. Messer, McBride Baker & Coles, Chicago, IL, for plaintiff.

Margaret J. Orbon and Brenda Dunton McNamara, Clausen Miller Gorman Caffrey & Witous, P.C., Chicago, IL, for National Union Fire Ins.

Robert J. Kopka, Creed T. Tucker and Joel M. Horwich, Landau, Omahana & Kopka, Ltd., Chicago, IL, for Federal Ins. Co.

**1122**

*MEMORANDUM OPINION
AND ORDER*

SHADUR, Senior District Judge.

In this diversity action Federal Insurance Company ("Federal") has filed a motion to dismiss Count III of the Complaint (a punitive damages claim) filed by KNS Companies, Inc. ("KNS") against Federal and three other insurance companies, in which KNS charges each insurer with having breached its policy or policies issued to provide KNS with comprehensive general liability coverage or excess liability coverage (each of the insurers wrote coverage for a different period or periods). All three codefendants have joined in Federal's motion, and KNS has filed a memorandum in response to Federal's, so that the matter is ripe for decision.

"Ripe for decision" may be somewhat of an overstatement, for although the litigants have briefed the issues they have also advised this Court of their joint belief:

> 1. that a complex choice of law question is presented at the outset (in that respect, they do agree that either Illinois or Indiana law will apply) and

> 2. that the resolution of that question very likely requires a factual inquiry (the center-of-gravity or "most significant contacts" approach that has been mandated by Illinois choice of law rules in contract cases).

Ordinarily that type of fact-oriented choice could not be made on a threshold Fed. R.Civ.P. ("Rule") 12(b)(6) motion, but the most recent submission by Federal's counsel suggests that the matter *is* capable of resolution now. Because the potential need for factual inquiry requires some further discussion and because it is a matter that may be reexamined later in the case without prejudice to the litigants, this opinion will first address the posture of the substantive law in both jurisdictions.

What is at issue in Count III is the ability of an insured to recover punitive damages from its insurer for a breach of the insurance contract where, as Count III ¶ 43 alleges:

> Defendants' actions and inaction with respect to the EPA Suit were undertaken in bad faith and constituted a willful breach of Defendants' duty to deal fairly and in good faith with KNS.

Federal urges that no such recovery is permitted under either Illinois or Indiana law, while KNS urges with equal vigor that both jurisdictions would allow such damages.

*Illinois Law*

■ Dealing squarely with the type of allegation advanced here by KNS, *Mijatovich v. Columbia Sav. & Loan Ass'n,* 168 Ill. App.3d 313, 316, 119 Ill.Dec. 66, 69, 522 N.E.2d 728, 731 (1st Dist.1988) teaches:

> Even an allegation that a bank acted in bad faith in breaching an agreement with its customer is not sufficient to give rise to a punitive damages claim.

That holding is simply a specialized application of the general proposition that conduct amounting to a breach of contract cannot as such give rise to a punitive damages award *unless* that conduct also constitutes a specific, independent tort of the kind for which the law permits such damages (*Morrow v. L.A. Goldschmidt Assoc., Inc.,* 112 Ill.2d 87, 95, 96 Ill.Dec. 939, 942, 492 N.E.2d 181, 184 (1986) and cases cited there).

KNS insists that insurance companies are different—that under Illinois law they occupy a specially disfavored category, in which their duty to deal fairly with their insureds converts any bad-faith refusal to honor a claim into such an independent tort—citing for that purpose *Ledingham v. Blue Cross Plan for Hosp. Care of Hosp. Serv. Corp.,* 29 Ill.App.3d 339, 330 N.E.2d 540 (5th Dist. 1975).[1] But an examination of the relevant case law discloses that the status of *Ledingham* as reliable authority in that respect is more than questionable, even though the Illinois Supreme Court in *Collins v. Reynard,* 154 Ill.2d 48, 51–52, 180 Ill.Dec. 672, 674, 607

---

1. KNS also cites to the same effect *Garman v. New York Life Ins. Co.,* 501 F.Supp. 51, 53 (N.D.Ill.1980), which relied on *Ledingham.* But it is of course basic jurisprudence that Illinois law is what Illinois courts say it is, not what

federal courts may say about it (see a portion of the later extended quotation from the *Combs* case). So *Garman* can neither improve nor detract from the stature of *Ledingham.*

N.E.2d 1185, 1187 (1992) (citations omitted) has cited *Ledingham* as one of the cases illustrating the principle stated in the final sentence in this paragraph:

> Although the common law distinctions between contract and tort have been both modified and confused by different courts in different situations, differences between tort theories and contract theories still have validity. For all of that, a punch in the nose remains, for all practical purposes, a tort and not a breach of contract. In the field of contract, however, some breaches have crossed the line and become cognizable in tort.

Most importantly for present purposes, other Illinois Appellate Districts have totally disagreed with *Ledingham*'s holding on the ground that the entire subject of possible punitive damage awards for contractual breaches by insurance companies has been preempted by statute (now 215 ILCS 5/155). Astonishingly *neither* side's counsel have cited to the cases so holding, most importantly the First Appellate District cases exemplified by *Combs v. Insurance Co. of Illinois*, 146 Ill.App.3d 957, 961–62, 100 Ill.Dec. 525, 528–29, 497 N.E.2d 503, 506–07 (1st Dist.1986) (citations omitted)—a case worth quoting at length:

> The question of whether punitive damages in tort are available as remedy to an insured for a wilful refusal by an insurance company to pay under a contract is not a novel one. A review of Illinois decisions reveals that the appellate court has been presented with that question on numerous occasions. In each of these instances, we have uniformly and consistently held that malicious conduct by an insurer in breaching a contract may not give rise to an independent wilful tort and the recovery of punitive damages.
>
> The basis for our refusal to award punitive damages for breach of good faith and fair dealing lies in the statutory provisions of section 155 of the Illinois Insurance Code. Enacted by the state legislature to assist policyholders as against an insurer's unreasonable and vexatious conduct, this section provides in pertinent part:
>
> [quoting the statute]
>
> Having thus provided an adequate remedy to insureds, the legislature, by virtue of enacting section 155, has pre-empted the field. We therefore have found it unnecessary to allow by judicial decree additional recovery on a contract beyond the aforementioned statutory prescriptions.
>
> \* \* \* \* \* \*
>
> While it appears that plaintiff recognizes the overwhelming weight of authority barring the recovery of punitive damages, he nonetheless still argues that his amended complaint states a cause of action within the principles stated in [two federal district court decisions]. However, these decisions have been rejected by this Court as well as by other Federal courts. In any event, even if we had not specifically held the rulings in these cases to be legally incorrect, decisions by the Federal courts, other than the United States Supreme Court, as to the law of Illinois are not binding on State courts.

See also *Kush v. American States Ins. Co.*, 853 F.2d 1380, 1385 (7th Cir.1988), reviewing the Illinois Appellate District cases on both sides of the preemption issue and focusing particularly on *Combs*.

■ For some unknown reason the Illinois Supreme Court has not availed itself of a number of opportunities to resolve this interdistrict conflict, despite the notoriety of the dispute and the commercial importance of the issue. Under that circumstance this Court has consistently held that in diversity cases such as this, *Erie v. Tompkins* commands federal district courts (just as their state court counterparts would be required) to adhere to the principle of Illinois substantive law most recently confirmed by the Illinois Supreme Court in *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill.2d 533, 539–40, 178 Ill.Dec. 745, 605 N.E.2d 539, 542 (1992)—the doctrine that where there are conflicting decisions from the various appellate districts, a trial court is bound to follow the controlling authority from its own district—in this instance the First Appellate District, with its uniform holdings in *Combs* and other cases.

■ Accordingly KNS would not be entitled to recover punitive damages against Federal and its codefendants under Illinois substantive law. That would sound the death knell for Count III if Illinois law indeed applied.

### Indiana Law

■ Indiana law in this area is far easier to pin down, both because unlike the Illinois situation it is unnecessary in Indiana to sort out the interplay between the common law and any statute and because the Indiana Supreme Court has shown no such reluctance as the Illinois Supreme Court to provide definitive guidelines for its lower courts and litigants before them. Just last year *Erie Ins. Co. v. Hickman,* 622 N.E.2d 515 (Ind. 1993) confirmed that in Indiana insurance contracts are viewed as sui generis (*id.* at 519), so that the insurer and insured stand in a "special relationship" (sometimes of a fiduciary nature) that may sometimes support imposition of a duty in tort (*id.* at 518). After discussing that subject at some length (*id.* at 519–20), *Erie Insurance* went on to hold that the recoverability of punitive damages poses a fact-bound inquiry (*id.* at 520) (citations omitted):

> As noted previously, Indiana law developed a rule which permitted an insured, under certain circumstances, to seek punitive damages in an action for the breach of an insurance contract. Although our holding in [*Miller Brewing Co. v.*] *Best Beers* [*of Bloomington, Inc.,* 608 N.E.2d 975 (Ind. 1993)] prohibits such a recovery in a breach of contract action, the recognition of an independent tort for the breach of the insurer's obligation to exercise good faith provides the tort upon which punitive damages may be based. Nonetheless, just as a jury's determination that a claim was, in retrospect, incorrectly denied is not sufficient to establish a breach of the duty to exercise good faith, proof that a tort was committed is not sufficient to establish the right to punitive damages.

> The standard for awarding punitive damages for the commission of a tort remains unchanged. Punitive damages may be awarded only if there is clear and convincing evidence that the defendant "acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing, in the sum [that the jury believes] will serve to punish the defendant and to deter it and others from like conduct in the future." Thus, the mere finding by a preponderance of the evidence that the insurer committed the tort will not, standing alone, justify the imposition of punitive damages.

Hence the Indiana rule is opposite to that in Illinois. Because the facts in this action have not yet been fleshed out, Count III must survive the present motion if Indiana law supplies the rule of decision here. It is time then for this opinion to return to the choice of law question that was earlier reserved for consideration.

### Choice of Law

■ In the first instance, the command of *Erie v. Tompkins* to look to the law of the forum in diversity cases points to the forum's choice of law rules (*Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941)). In this instance *Diamond State Ins. Co. v. Chester-Jensen Co.,* 243 Ill.App.3d 471, 183 Ill.Dec. 435, 611 N.E.2d 1083 (1st Dist.1993), a less-than-two-year-old Illinois Appellate Court decision that also involved a request for a declaratory judgment as to the obligations of different insurers to defend their insured, has addressed and expressly decided the question now before this Court.

After referring to prior cases illustrating that the "most significant contacts" rule applies to contract actions in general (citing *Purcell & Wardrope Chartered v. Hertz Corp.,* 175 Ill.App.3d 1069, 125 Ill.Dec. 585, 530 N.E.2d 994 (1st Dist.1988)) and insurance contracts in particular (citing *Hofeld v. Nationwide Life Ins. Co.,* 59 Ill.2d 522, 322 N.E.2d 454 (1975)), *Diamond State,* 243 Ill. App.3d at 486–87, 183 Ill.Dec. at 445–46, 611 N.E.2d at 1093–94 discussed and swiftly rejected the argument of the insurers in that case that the places their policies were issued should predominate over any other contacts.

*Diamond State* then proceeded through the *Hofeld* analysis, first examining and then discounting a number of factors (including the state of the insured's incorporation and its principal place of business), and ultimately placing the court's main emphasis on the location of the insured risk.

In that latter respect *Diamond State, id.* at 488, 183 Ill.Dec. at 447, 611 N.E.2d at 1095 relied heavily on the Restatement (Second) of Conflict of Laws § 193 (1971) (and especially that section's cmt. b, at 611) and on *Allen v. State Farm Mut. Auto Ins. Co.,* 214 Ill. App.3d 729, 158 Ill.Dec. 261, 574 N.E.2d 55 (1st Dist.1991) for the proposition that the "location of the insured risk will be given greater weight than any other single contact in determining the state of applicable law provided that the risk can be located, at least principally, in a single state." Indeed, *Diamond State, id.* expressly approved the recourse for that purpose to the location of the particular insured risk where a policy covers multiple risks, treating such a policy as though it were made up of several policies each insuring a separate risk (in that respect the opinion relied on cmt. f to the same Restatement section).

At this stage of the game *Diamond State* provides a striking (though to be sure not a total) parallel to this case. Although KNS is an Illinois-based corporation, all of the insurers' policies provided it with coverage extending to all of its operations, and the claim at issue stems from the United States Environmental Protection Agency's having asserted KNS' responsibility for the payment of costs of cleaning up an Indiana site where KNS' solvent was treated by another company (a licensed hazardous waste treatment facility). Thus the assertedly insured risk has its situs in Indiana, and *Diamond State* calls for the application of Indiana law.

It may be that further factual development of the issues may suggest a different weighing of the relevant considerations, but for now it must be concluded that Indiana law does set the standard. And that in turn spells the survival of Count III.

*Conclusion*

Complaint Count III cannot be jettisoned on the basis of the information and authorities tendered to this Court. Federal's (and its codefendants') motion to dismiss is denied, and all defendants are ordered to answer Count III on or before November 16, 1994.