JOHN MAZUR, JR., Plaintiff-Appellant, v. DENA R. HUNT *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—89—2473

Opinion filed March 27, 1992.

Sam Panger, Jr., of Katz, Karacic & Helmin, of Chicago, for appellant.

Gary M. Feiereisel, of Fraterrigo, Best & Beranek, of Chicago, for appellees.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff John Mazur, Jr., appeals from the trial court's dismissal of count V of his complaint which sought compensatory and punitive damages for alleged fraud by the defendants. For the reasons set forth below, we affirm.

This action arises from the theft of several pieces of jewelry from plaintiff's home and the subsequent handling of his insurance claim by the defendants United States Fire Insurance Company and Crum and Forster, who issued plaintiff's homeowners policy, and Dena R. Hunt, an agent of Crum and Forster and United States Fire Insurance Company. Plaintiff has been paid for some of the jewelry taken and has signed a proof of loss form for those items. However, defendants refuse to pay for the loss of two additional pieces which were not included on the proof of loss form. It is the defendants' failure to com-

pensate plaintiff for these two items, which plaintiff alleges are worth $41,000, which is the subject of this action.

Plaintiff filed a five-count complaint. Count I alleged breach by United States Fire Insurance Company and Crum and Forster of the "newly acquired property" provisions of his insurance policy. Under these provisions, defendant was required to pay the lesser of "25% of the amount of insurance for that class of property" or $10,000. Count I sought compensatory damages of $10,000, costs, prejudgment interest and attorney fees and other amounts provided for in section 155 of the Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 767).

Count II alleged that the jewelry at issue was fully covered under the policy and alleged breach of the policy and sought compensatory damages for the full value of the jewelry, $41,000, plus costs, prejudgment interest, attorney fees and additional amounts provided for in section 155 of the Insurance Code.

Counts III and IV involved defendants not parties to this appeal.

Count V alleged fraud by defendant Dena Hunt in obtaining a signed proof of loss from plaintiff and using it to bar plaintiff's claim for the two items of jewelry that were omitted. Plaintiff alleged fraud by defendants United States Fire Insurance Company and Crum and Forster by virtue of the acts of their agent, Hunt. The gist of the fraud allegations is that Hunt obtained plaintiff's signature on a proof of loss that omitted two recently acquired items of jewelry, on the representation that it would not bar his subsequent claim for those two items, and that those two items would be handled separately. Plaintiff alleges he was induced to sign the proof of loss by being told that in this way he could receive some of the money due him and not lose his right to claim the two additional items of jewelry. After plaintiff signed the proof of loss, Hunt used it to deny his claim for the two additional pieces of jewelry. Count V sought compensatory damages of $41,000 and punitive damages of $2 million.

Defendants answered the complaint and asserted as an affirmative defense to counts I and II the proof of loss form signed by the plaintiff. According to defendants, the proof of loss form "was executed by the plaintiff in full satisfaction and indemnity for all claims and demands upon the insurance company issuing the Homeowner's Insurance Policy in question."

Defendants moved to dismiss count V pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615), contending that plaintiff's common law action was preempted by section 155 of the Illinois Insurance Code, which provided the sole

remedy available to plaintiff for denial of benefits. Defendants' motion was granted and plaintiff now appeals.

OPINION

■■ Plaintiff raises several issues on appeal. His primary contention is that the trial court erred in finding that count V of his complaint was preempted by section 155 of the Insurance Code. Section 155 provides:

> "Attorney fees. (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
>
> (a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
>
> (b) $25,000;
>
> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action." Ill. Rev. Stat. 1987, ch. 73, par. 767 (hereinafter section 155).

The parties agree that this statute preempts a claim by an insured against his insurer for the breach of the duty of good faith and fair dealing, an implied term of a contract of insurance, a claim which was elevated to the status of an independent tort in *Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp.* (1975), 29 Ill. App. 3d 339, 330 N.E.2d 540, *rev'd on other grounds* (1976), 64 Ill. 2d 338, 356 N.E.2d 75. See *Combs v. Insurance Co.* (1986), 146 Ill. App. 3d 957, 497 N.E.2d 503; *Trautman v. Knights of Columbus* (1984), 121 Ill. App. 3d 911, 460 N.E.2d 350; *Kinney v. St. Paul Mercury Insurance Company* (1983), 120 Ill. App. 3d 294, 458 N.E.2d 79; *Tobolt v. Allstate Insurance Co.* (1979), 75 Ill. App. 3d 57, 393 N.E.2d 1171; *Urfer v. Country Mutual Insurance Co.* (1978), 60 Ill. App. 3d 469, 376 N.E.2d 1073; *Debolt v. Mutual of Omaha* (1978), 56 Ill. App. 3d 111, 371 N.E.2d 373.

Plaintiff urges, however, that an action for fraud is a distinct tort, arising, not from an implied term of the contract of insurance, but rather from a general duty imposed by law, and is distinguishable

from the breach of the duty of good faith and fair dealing in that fraud requires an affirmative act. According to plaintiff, it is this difference which determines the applicability of section 155, and that since the duty breached in the tort of fraud does not arise from the contract, the statute is inapplicable.

It is defendants' position that "despite Plaintiff's attempt to characterize count V as a common law action for fraud which is independent of the actions pled in counts I and II, when the allegations of count V are examined in detail there can be no question but that all count V contains are more specific allegations of the Defendants' refusal to pay the entire amount of Plaintiff's claim." Accordingly, defendants urge, plaintiff's claim would fall within the statute as an action in which the amount of loss payable under a policy is in issue and would be preempted. We agree with the defendants.

The cases cited above have clearly held that by enacting section 155, the legislature evinced its intention to preempt the field. As stated in *Debolt* (56 Ill. App. 3d at 116):

> "We are of the opinion that the legislature has intended to provide a remedy to an insured who encounters unnecessary difficulties with an unreasonable and vexatious insurance company. The insured can maintain an action on the contract for recovery of the withheld policy benefits and upon proper finding by the court can be awarded attorney fees in addition to all other costs. Where the legislature has provided a remedy on a subject matter we are not only loath but in addition harbor serious doubts as to the desirability and wisdom of implementing or expanding the legislative remedy by judicial decree."

In a separate opinion in *Urfer*, cited with approval in *Tobolt*, Presiding Justice Mills stated:

> "[T]he question of punitive and compensatory damages in tort for a wilful refusal to pay under a contract does give me concern. *** It strikes me that statutory causes of action, being creatures of the legislative branch, should be viewed with judicial restraint. The *Debolt* rationale of legislative preemption in this area—by recovery of reasonable and limited attorney's fees—is cogent and convincing. ***

> *** I agree to affirm because there can be no tortious recovery on a contract beyond the statutory prescriptions, the legislature having preempted the field." (*Urfer*, 60 Ill. App. 3d at 475-76, (Mills, P.J., concurring in part, dissenting in part).)

(Accord *Combs*, 146 Ill. App. 3d at 961.) In *Combs*, the court considered the impact of the 1977 amendment to section 155 which removed

the preexisting cap of $1,000 on recoverable attorney fees and for the first time added a punitive damage provision which the statute contains to the present day. The court stated, "The subject statute, as originally enacted *** allowed an aggrieved insured to recover a prescribed amount of attorney fees in addition to recovery of proceeds under the policy. In 1977, the legislature deemed it necessary to expand plaintiff's relief to include all reasonable attorney fees, other costs, an additional sum amounting to a penalty, as well as recovery of proceeds under the policy. The Illinois legislature, by virtue of these enactments, has clearly manifested its intent to keep this matter within its power and control." *Combs*, 146 Ill. App. 3d at 962-63.

Plaintiff, however, contends that section 155 was intended to address refusals of a carrier which are merely objectively unreasonable but not refusals which involve tortious misconduct. In support, he cites *Evaluation Systems, Inc. v. Aetna Life Insurance Co.* (N.D. Ill. 1982), 555 F. Supp. 116, where the Federal court considered the differences between a tort action for bad faith and an action brought pursuant section 155. The issue in *Evaluation Systems* was whether a claim brought pursuant to section 155 was legally deficient due to the plaintiff's failure to allege bad faith or sinister motives by defendant. In holding that allegations of bad faith were not required in an action under section 155, the court stated, "[u]nder the tort theory the insurer's bad intent is an essential component of its actionable conduct," while an action under section 155 "appears to focus on the objective reasonableness of the insurer's refusal to pay." *Evaluation Systems*, 555 F. Supp. at 121.

■■ ■ However, saying that bad faith is not a required element of an action under section 155 as did the court in *Evaluation Systems* is not the same as saying that an action which does allege bad faith is not within the scope of section 155. In *Tobolt*, the court considered allegations that the insurer had made false, fraudulent and deceitful representations. These allegations were made in a claim for compensatory and punitive damages for failure to act in good faith, a claim which was held to be preempted by section 155. Similarly, in *Urfer*, the complaint alleged "willful and malicious" acts by the insurer, and the court found that section 155 preempted such an action. As a result, we are not persuaded that the fact that a cause of action in fraud requires an affirmative act which is not necessarily required in an action for breach of good faith and fair dealing removes plaintiff's count V from the preemptive scope of section 155. See also *Robertson v. Travelers Insurance Co.* (1983), 95 Ill. 2d 441, 447, 448 N.E.2d 866 (where the court, in considering the phrase "unreasonable or vexa-

tious delay" used in the Workers' Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.5(a)), stated "this section, while applicable in cases of ordinary delay without justification [citations] is no less applicable to delay which is malicious").

The rationale for our conclusion in this case is not dissimilar to that of our supreme court in *Richardson v. Economy Fire & Casualty Co.* (1985), 109 Ill. 2d 41, 485 N.E.2d 327, where the court delineated the scope of the bar against bringing direct negligence actions against insurance carriers. There, plaintiff was injured in a motorcycle accident allegedly caused by the negligence of defendant's insured. The defendant settled with the plaintiff for $1,500 and procured plaintiff's signature on a release. The plaintiff and his wife later sued the defendant, alleging they were fraudulently induced to settle the claim for only $1,500, and sought damages "in excess of $15,000."

The issue before the court was whether plaintiffs' purported fraud action was actually a direct action against an insurance carrier for personal injury damages caused by the negligence of its insured, for if so, the claim would be barred by the public policy of the State against direct actions against insurers prior to obtaining a judgment against the insured. Based on the fact that the damages sought were "precisely the same damages they would have been able to recover had they originally brought a personal injury action against [the insured]," the court concluded that the claim was a direct action notwithstanding the allegations of fraud in obtaining the settlement. (*Richardson*, 109 Ill. 2d at 50.) The court noted that plaintiffs did not claim any additional damages from the fraud itself. "Plaintiffs here do not specifically plead damages for fraud. Rather, they have included in their complaint the standard *ad damnum* clause for personal injury actions ***." *Richardson*, 109 Ill. 2d at 51.

Analogously, here count V seeks precisely the same compensatory damages plaintiff would be able to recover in an action on the insurance policy. He has not pled any additional damages from the alleged fraud. As discussed above, "*any* count alleging nothing more than the conduct proscribed by section 155 is preempted by the statute." (Emphasis in original.) *Combs*, 146 Ill. App. 3d at 964.

Plaintiff also argues, in the alternative, that in no event should the court have dismissed his claim for compensatory damages under count V, since even if section 155 preempts a claim for punitive damages, it does not preempt a claim for compensatory damages, citing *Hoffman v. Allstate Insurance Co.* (1980), 85 Ill. App. 3d 631, 407 N.E.2d 156. There the court said that "section 155, on its face, does not preempt a plaintiff's right to claim compensatory damages for a

breach of good faith and fair dealing." (*Hoffman*, 85 Ill. App. 3d at 635.) Several opinions from this district, however, have clearly stated that an action which seeks as compensatory damages the same relief as available under the insurance policy is preempted by section 155. For example, in *Kinney*, the court stated that section 155 "preempted the filing of a common law action for the same relief, *i.e.*, for damages and for violations of duties of good faith and fair dealing." *Kinney*, 120 Ill. App. 3d at 297. See also *Tobolt*, 75 Ill. App. 3d 57, 393 N.E.2d 1171 (section 155 preempts the field); *Combs*, 146 Ill. App. 3d 957, 497 N.E.2d 503 (same); *Trautman*, 121 Ill. App. 3d at 915 (section 155 "preempts the filing of a common law action for breach of an implied covenant of good faith and fair dealing and limits damages to that amount stated in the pertinent provisions of the Code").

Although labeled as a fraud count, the issue in count V is the amount of loss payable under the policy, with allegations that defendant's failure to pay is unreasonable or vexatious, a claim which is preempted by section 155. (See *Combs*, 146 Ill. App. 3d 957, 497 N.E.2d 503 (although styled as a claim for intentional infliction of emotional distress, when stripped of legal conclusions, count clearly frames allegations of breach of duty of good faith). See also *Richardson*, 109 Ill. 2d 41, 485 N.E.2d 327.) The essence of count V is that by virtue of the fraudulent representations by defendants, they have refused to pay for the two pieces of jewelry as provided in the policy. This is evident from the compensatory damages sought, $41,000, which is the amount plaintiff contends in count II is due him under his policy for the stolen jewelry. Apart from not being paid for the two pieces of jewelry, plaintiff has not alleged that he suffered any additional harm from defendants' conduct. (See *Richardson*, 109 Ill. 2d 41, 485 N.E.2d 327 (plaintiffs alleged no damages as a result of fraud). See also *Debolt*, 56 Ill. App. 3d at 116 ("[t]he insured can maintain an action on the contract for recovery of withheld policy benefits and upon proper finding by the court can be awarded attorney fees in addition to all other costs").) As a result, we conclude that the trial court was correct in holding that count V was preempted by section 155 of the Insurance Code.

Plaintiff cites the cases of *Trautman*, *Kinney*, and *Hoffman*, where similar fraud claims were filed and, in each instance, dismissed. But the dismissal in each of these cases was not grounded upon preemption but upon the failure to allege an essential element of the tort. (See *Trautman*, 121 Ill. App. 3d 911, 460 N.E.2d 350 (failure to allege reliance); *Kinney*, 120 Ill. App. 3d 294, 458 N.E.2d 79 (failure to allege reliance); *Hoffman*, 85 Ill. App. 3d 631, 407 N.E.2d 156 (fail-

ure to allege injury). See also *Debolt*, 56 Ill. App. 3d 111, 371 N.E.2d 373 (claim of intentional infliction of emotional distress dismissed for failure to allege outrageous conduct); *Urfer*, 60 Ill. App. 3d 469, 376 N.E.2d 1073 (claim of wilful refusal to pay dismissed for failure to allege intent); *Tobolt*, 75 Ill. App. 3d 57, 393 N.E.2d 1171 (claim of intentional infliction of emotional distress dismissed for failure to allege outrageous conduct).) However, the inferences to be drawn from these decisions is at best inconclusive since, having determined that no cause of action was otherwise stated, the courts had no need to consider the question of preemption. See, *e.g., Trautman*, 121 Ill. App. 3d at 915 ("our decision that plaintiff failed to allege the requisite elements for an independent tort of fraud obviates the need to discuss the issue of whether a cause of action for exemplary as well as punitive damages is recognized in Illinois when a breach of contract amounts to an independent wilful tort").

Other cases cited by plaintiff in support of his argument that his fraud count is not preempted are inapplicable. (See *Lewis v. Royal Globe Insurance Co.* (1988), 170 Ill. App. 3d 516, 524 N.E.2d 1126; *McCarter v. State Farm Mutual Automobile Insurance Co.* (1985), 130 Ill. App. 3d 97, 473 N.E.2d 1015; *Sommer v. United Savings Life Insurance Co.* (1984), 128 Ill. App. 3d 808, 471 N.E.2d 606.) In *Lewis* and *McCarter*, the courts allowed claims of fraud against insurers to stand. Those cases, however, were claims by third parties, not the insured, and plaintiff himself acknowledges that section 155 has not been applied to claims by third parties. In *Sommer*, the fraud alleged was in the making of the contract and, therefore, would not fall within the scope of section 155.

■ Plaintiff also argues that section 155 applies only to the insurer on the policy and not to its agents and that, therefore, even if defendants' preemption arguments are correct, they do not apply to Hunt or Crum and Forster. Plaintiff, however, did not raise this argument before the trial court, arguing there only that his claim of fraud was distinct from one for breach of the duty of good faith and fair dealing and therefore not preempted by section 155. By failure to raise the issue below, it is waived. (*Lemke v. Kenilworth Insurance Co.* (1985), 109 Ill. 2d 350, 487 N.E.2d 943.) In addition, plaintiff has cited no authority in his brief on this question, and failure to cite any authority in support of an argument further constitutes waiver of that argument. (*Nicholl v. Scaletta* (1982), 104 Ill. App. 3d 642, 432 N.E.2d 1267.) Moreover, even absent a waiver of this issue, there is a strong indication that an action against an agent of an insurer is subject to the same preemption by section 155 as is an action against the

insurer. See *Combs*, 146 Ill. App. 3d 957, 497 N.E.2d 503 (court holds action against insurer and its adjuster preempted by section 155).

■ Finally, plaintiff contends that the application of section 155 to preempt an action for fraud by an insured against his insurer would make the statute unconstitutional as special legislation (Ill. Const. 1970, art. IV, §13), or violative of the equal protection clause (Ill. Const. 1970, art. I, §2). This argument is based upon plaintiff's presumption that our ruling will bar independent common law fraud claims against insurers by both insureds and third parties, and would thereby confer a limitation of liability on insurers without a rational relationship to a legitimate government interest. However, our ruling here is not so broad. We hold only that a common law tort claim by an insured against his insurer which seeks as damages only those which might be recovered in an action on the insurance policy is pre-empted. In this posture, both of plaintiff's arguments have been previously considered and rejected, and plaintiff has not convinced us to reconsider those positions. See *Kaniuk v. Safeco Insurance Co.* (1986), 142 Ill. App. 3d 1070, 492 N.E.2d 592 (rejecting claim that section 155 amounted to special legislation because of special public interest in regulation and control of for-profit insurers, and thus a reasonable basis existed for classifying insurers separately from other businesses); *Sale v. Allstate Insurance Co.* (1984), 126 Ill. App. 3d 905, 467 N.E.2d 1023 (rejecting claim that section 155 violates equal protection due to reasonable basis for distinguishing between first-party claimants and third-party claimants, and plaintiff's failure to overcome presumption of constitutionality).

Accordingly, for all the above reasons, the judgment of the circuit court of Cook County dismissing count V is affirmed.

Affirmed.

McNULTY, P.J., and MURRAY, J., concur.